UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN BLOMENKAMP,                )<br>                                                    )<br>            Plaintiff,                        )<br>                                                    )<br>v.                                              )<br>                                                    )  Case No. 3:14-cv-00860-NJR-PMF<br>VILLAGE OF FREEBURG;            )<br>                                                    )<br>RAY DANFORD., in his              )<br>individual and official capacity      )<br>as Mayor of the Village of Freeburg;  )<br>                                                    )<br>DENNIS HERZING, in his individual and  )<br>official capacity as Village Administrator  )<br>for the Village of Freeburg;          )<br>                                                    )<br>MEL WOODRUFF, in his individual and  )<br>official capacity as the Chief of Police  )<br>for the Village of Freeburg; and    )<br>                                                    )<br>MIKE SCHUTZENHOFER, in his     )   JURY TRIAL DEMANDED<br>individual and official capacity      )<br>as the Investigator for the            )<br>Village of Freeburg.                     )<br>                                                    )<br>            Defendants.                  )| |

## COMPLAINT

COMES NOW Plaintiff John Blomenkamp, by and through his attorney, and for his Complaint against the Defendants states as follows:

### JURISDICTION AND VENUE

1. This action arises under the First Amendment of the United States Constitution, 42 U.S.C. § 1983.

2. The Court has jurisdiction to hear this Complaint and to adjudicate the claims stated herein pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

3.     This Court has supplemental jurisdiction with respect to claims arising under state law pursuant to 28 U.S.C. § 1367.

4.     Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred within the Southern District of Illinois.

**PARTIES**

5.     Plaintiff John Blomenkamp ("Plaintiff" or "Officer Blomenkamp") is an individual and resident of Unincorporated Freeburg, St. Clair County, Illinois.

6.     Defendant the Village of Freeburg is a municipality incorporated and organized under the laws of the State of Illinois.

7.     Defendant Ray Danford was, at all times relevant to this action, the Mayor of the Village of Freeburg and was acting in such capacity, as well as his individual capacity, as an agent, servant and employee of the Village and was acting pursuant to the official policy, customs, and usage of the Village.

8.     Defendant Dennis Herzing was, at all times relevant to this action, the Administrator for the Village of Freeburg and was acting in such capacity, as well as his individual capacity, as an agent, servant and employee of the Village and was acting pursuant to the official policy, customs, and usage of the Village.

9.     Defendant Mel Woodruff was, at all times relevant to this action, the Chief of Police for the Village of Freeburg and was acting in such capacity, as well as his individual capacity, as an agent, servant and employee of the Village and was acting pursuant to the official policy, customs, and usage of the Village.

10.    Defendant Mike Schutzenhofer was, at all times relevant to this action, the Investigator for the Village of Freeburg Police Department and was acting in such capacity, as

well as his individual capacity, as an agent, servant and employee of the Village and was acting pursuant to the official policy, customs, and usage of the Village.

11.     The Defendants and employees of the Defendants have defamed, discriminated and retaliated against the Plaintiff for the lawful exercise of his individual civil rights and liberties of free expression and participation in labor, union, and political activities. The Defendants have targeted the Plaintiff due to these lawful actions.

## **FACTUAL ALLEGATIONS**

12.     Plaintiff John Blomenkamp was a police officer with the Village of Freeburg ("Village") for 15 years, from October 1, 1997 until he was terminated on September 4, 2012. During his tenure, Officer Blomenkamp served with distinction and honor.  His performance reviews were uniformly outstanding and commendable.  He had no record of disciplinary deficiencies.  Fellow officers, community leaders, and officers from other jurisdictions confirm Officer Blomenkamp's honesty and overall job performance.

13.     Even though the Plaintiff was well liked and respected by the community and his fellow police officers, he was termed somewhat of a "trouble maker" by the Village Administration.  The Plaintiff was an honest and ethical police officer and had no problems voicing his concerns over corruption within the Village of Freeburg Police Department ("Department").  The Plaintiff voiced his concerns over issues such as evidence being handled improperly, old evidence and found property being sold on EBay, the Chief of Police using old evidence for personal uses, the Chief of Police not working during hours reported on his time card, and police officers visiting their girlfriends while on the clock.

14.     Division of the ranks within the Department first began when the Union Steward filed a grievance against eliminating the Sergeant's position held by Officer Steven Burrows.

The Plaintiff supported the grievance because it was clear to him that the Village Administration sought to eliminate the Sergeant's position for personal reasons against Officer Burrows not financial reasons given by the Administration.  After the Plaintiff made it clear that he was supporting the Union and Officer Burrows, the Plaintiff's popularity within the Administration deteriorated.

15.    For several months before the February 2012 election for Union President, the Plaintiff was increasingly vocal in replacing the Union President and Vice President because every action taken by them was pro-administration and against the membership. In February 2012, the Plaintiff ran for and was voted in as Union President for the Department.  As President, the Plaintiff was not shy in his opinions and felt responsible for turning around the corruption taking place within the Department.

16.    The Plaintiff's unpopularity with the Defendants intensified when he was elected Union President.  In fact, after the Plaintiff was voted in as Union President, he had to involve the main Union, the Policeman Benevolent and Protective Association (PBPA), because the Village Administration would not recognize the Plaintiff as the Union President.  The Administration would only communicate with the former Union President, John Cappello.  The PBPA instructed the Village Administrator, Defendant Dennis Herzing, that all further Union contact must be with the Plaintiff and must be in writing.

17.    The Plaintiff began his reign as Union President by advocating against the proposed Collective Bargaining Agreement being adopted by the Union.  His stand on that issue incensed the Defendants.  In fact, one police officer was warned by the Defendants that if he voted with the Plaintiff not to adopt the Collective Bargaining Agreement, he would lose his job. That police officer voted no, on two occasions, and was ultimately terminated.

18. It was well known throughout the Department that the Plaintiff was planning and preparing to file several grievances against the Administration. In response, Defendant Chief Mel Woodruff ("Chief Woodruff"), Defendant Dennis Herzing and Defendant Mayor Ray Danford ("Mayor Danford") stated that any individual who filed Union grievances against the Village should be terminated.

19. Thus, the Defendants were intent upon securing the termination of employment of the Plaintiff because of his Union activities and quest to end the corruption. In fact, the Defendants began a campaign against the Plaintiff and his main supporter, Officer Burrows, to terminate the Plaintiff and Officer Burrows from the Department.

20. To that end, the Plaintiff, along with Officer Steven Burrows, was formally placed on administrative leave, with pay by letter of notice of a pending internal investigation on May 4, 2012. The Notice provided a list of the complaining parties, but no documentation of specific allegations.

21. On July 23, 2012, the Plaintiff received the formal "Report and Conclusion of Internal Investigation." That "Report," prepared by Chief Woodruff, documented the allegations of misconduct and included the recommendation that the Plaintiff be scheduled for "a *Loudermill* pre-disciplinary hearing."

22. The allegations of misconduct in the Report were mostly minor and were fabricated in order to find cause to terminate the Plaintiff. The Report included allegations that the Plaintiff accessed other officers' file drawers without permission, removed business cards and gloves from an officer's file drawer, attempted to access another officer's locked locker, broke into another officer's locker, failed to report observed misconduct of another officer and engaged in insubordination. The most serious and damaging allegation, which was also

fabricated, was that the Plaintiff accessed the permanent evidence locker in violation of Department policy.

23. The alleged allegations of misconduct took place over a long period of time, February 2012 through May 2012. The Plaintiff was not confronted with any of these allegations until May 2012 and was not afforded a progressive discipline plan for any of the allegations, which was the normal course of discipline in the Department. The Defendants waited until they felt they had enough evidence against the Plaintiff in order to terminate him instead of disciplining him as soon as the issues arose.

24. The primary element of evidence offered by the Village are various DVD footages from a hidden camera installed in the common room of the Department. Chief Woodruff and Defendant Investigator Mike Schutzenhofer ("Investigator Schutzenhofer") decided to install a hidden camera in the common room in order to obtain evidence of misconduct against the Plaintiff and Officer Burrows.

25. The hidden camera was installed at the end of January 2012, shortly before the Plaintiff was voted in as Union President and began taking action as such. Chief Woodruff and Investigator Schutzenhofer reviewed and edited the video. When editing the video, Chief Woodruff and Investigator Schutzenhofer cut one minute clips out of the entire video showing the alleged misconduct. There was no sound in the video and the allegations put forward were pure supposition based on the one minute clips.

26. The only evidence of the alleged violations was those depicted in the videos. The only video saved were clips depicting the alleged misconduct of the Plaintiff and Officer Burrows. In fact, some of the video used to terminate the Plaintiff was "accidently" deleted by

Chief Woodruff. Chief Woodruff and Investigator Schutzenhofer did not know how to properly use the video equipment.

27. There were multiple instances of acts or omissions on the part of other officers that were not shown in the video clips and were not considered violations even though the same acts were utilized as a basis for seeking the discharge of employment of the Plaintiff and Officer Burrows.

28. In the July 23, 2012 letter, the Plaintiff was advised that his pre-disciplinary hearing was scheduled for July 31, 2012. Because the hearing was to be conducted before Chief Woodruff, who had prepared the Report and recommended the pre-termination hearing, Shane Voyles, attorney for the PBPA Labor Committee, objected to Chief Woodruff as the hearing officer.

29. By correspondence from the Village attorney, Brian Manion, dated July 30, 2012, the pre-termination hearing was rescheduled for August 2, 2012 to be conducted before Mayor Danford.

30. By email, and correspondence, Shane Voyles advised the Village attorney that the Plaintiff would not participate in the scheduled hearing since it was not to be conducted before the Village Board which had the ultimate authority for hiring and firing of Village employees.

31. The transcript of the hearings conducted on August 2, 2012 reflect separate hearings were conducted; Officer Burrows at 2:00 p.m. and the Plaintiff at 2:30 p.m. The transcript also reflected that the only individuals in attendance at the hearing were Village attorney, Brian Manion, Mayor Danford, Dennis Herzing and Chief Woodruff. The Village Trustees were not present. No evidence was presented nor were recommendations as to employment documented on the record.

32. In the past, Village employees, including police officers, faced with potential termination of employment, were afforded the opportunity to appear before the Village Board, with representation, prior to discharge. The procedures adopted by the Village, for the discharge of the Plaintiff, were markedly different from those exercised in other cases involving the disciplinary discharge of a Village employee.

33. In this case, the pre-termination hearing was limited to only those individuals who were seeking to terminate the Plaintiff. The Village Board was not notified when and where the hearing would take place. In fact, the hearing took place in Defendant Herzing's office and not in the Board meeting room as usual.

34. By letter of August 3, 2012, directed to the Village Board, Mayor Danford recommended the termination of employment of the Plaintiff. Although the letter to the Village Board referred to the Report prepared by Chief Woodruff, the specific allegations of misconduct were not delineated.

35. The recommended termination of the Plaintiff was considered by the Village Board at its regular meeting on September 4, 2012. Prior to that meeting, the Plaintiff prepared a written response to the charges directed against him. The Plaintiff was then allowed only ten minutes in which to address the Village Board prior to the vote on his termination. The Plaintiff was not allowed to present evidence, cross-exam witnesses, to appear with legal counsel, or Union representation, at that meeting. The same procedure took place with Officer Burrows.

36. The Village Board voted to terminate the Plaintiff. Even though the Village Board had met as a "committee as a whole" on August 30, 2012, the Plaintiff was not given the opportunity to appear. It was reported in the Belleville News Democrat following that meeting

that the Village attorney had recommended that the Plaintiff not be granted the opportunity to appear before the Board because the Police Union might file complaints.

37. The Plaintiff was notified of termination of employment by letter on September 6, 2012 from Mayor Danford. The other police officer, Steven Burrows, was similarly notified by letter of the same date. A Grievance was filed on behalf of the Plaintiff by the authorized representative of the PBPA, Shane Voyles.

38. The decision of the arbitrator is under appeal.

39. Since the Plaintiff's suspension in May 2012, the Defendants have continued to make defamatory statements about the Plaintiff. In particular, the Defendants have made false and stigmatizing statements to third parties, including the general public, the press, and the Plaintiff's co-workers in order to destroy the Plaintiff's reputation and credibility.

40. The Plaintiff's family have been citizens and an important part of community since the 1950s. In fact, his father was the Superintendent of Utilities for the Village and his brother is a prominent businessman in the community. The Plaintiff has also been an important part of the community for many years, volunteering his time to several organizations and community issues. He was elected to the school board three times and was a member of the Freeburg Grade School Foundation Board.

41. As a direct and proximate result of the Defendants actions, the Plaintiff has suffered and will continue to suffer in the future actual damages in the form of lost wages (back pay and front pay), benefits, loss of earning capacity, loss of career opportunity, loss of seniority, cost of seeking alternative income, mental anguish, severe emotional and physical distress, anxiety, depression, embarrassment, humiliation and loss of enjoyment of life.

**COUNT I**
**DEPRIVATION OF FREE SPEECH**

42. By reference hereto, the Plaintiff incorporates paragraphs 1 through 41 of his complaint.

43. At all material times, Officer Blomenkamp spoke publicly, as a citizen and as a union member, on matters of public concern, including, but not limited to: evidence being handled improperly, old evidence and found property being sold on EBay, the Chief of Police using old evidence for personal uses, the Chief of Police not working during hours reported on his time card, police officers visiting their girlfriends while on the clock and other subjects. Officer Blomenkamp's right to speak out freely on these and other matters of public concern is protected by the First and Fourteenth Amendments to the U.S. Constitution.

44. Upon learning that Officer Blomenkamp had spoken out or was planning to speak out on such matters of public concern, the Defendants, individually, separately, and/or jointly, engaged in actions and decisions aimed at denying Officer Blomenkamp's employment rights and protections granted to him under the law. These actions and decisions were designed to cause, and have caused, Officer Blomenkamp to suffer numerous adverse employment actions, humiliation, harm to his reputation, emotional and mental injuries, pain and suffering, and financial and other adverse consequences, for which he seeks full damages.

45. Such actions and decisions of the Defendants, individually, separately, and/or jointly, were taken in response to, in retaliation for, and in order to chill, Officer Blomenkamp's exercise of his constitutional and lawful right to speak out about matters of public concern, in violation of his rights under the First and Fourteenth Amendments of the U.S. Constitution. The grounds and reasons offered by the Defendants for the adverse actions and decisions against Officer Blomenkamp are pretextual.

46. Such actions and decisions of the Defendants, individually, separately, and/or jointly, were taken under color of law, and have deprived Officer Blomenkamp of his rights, privileges and immunities secured by the U.S. Constitution and laws in violation of 42 U.S.C. § 1983. Liability and redress exist under 42 U.S.C. § 1983.

47. Such actions and decisions of the Defendants, as alleged herein, make the Defendant Village of Freeburg fully liable to the Plaintiff under 42 U.S.C. § 1983 based on the authority and actual decisions of the other Defendants. In addition, such unlawful actions and decisions, as alleged herein, were based on the policymaking and final decision-making authority of the Defendant Village of Freeburg and were based on the policy, custom, and practice of the Village of Freeburg.

48. Such actions and decisions on the part of the Defendants, individually, separately, and/or jointly, as alleged herein, were done in a knowing, willful, reckless manner and in bad faith.

49. As a result of the Defendants' violation of 42 U.S.C. § 1983, the Plaintiff is entitled to his attorneys' fees and costs.

## COUNT II
## ILLINOIS WHISTLEBLOWER ACT – UNLAWFUL RETALIATION

50. By reference hereto, the Plaintiff incorporates paragraphs 1 through 49 of his complaint.

51. The Village is an "employer" and Officer Blomenkamp is an "employee" within the meaning of Illinois Statute 740 ILCS 174/5.

52. Illinois Statute 740 ILCS 174/15 (b) provides that an employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of

a State or federal law, rule, or regulation.

53. Illinois Statute 740 ILCS 174/20.1 provides any other act or omission not otherwise specifically set forth in this Act, whether within or without the workplace, also constitutes retaliation by an employer under this Act if the act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing.

54. The Defendants, individually, separately, and/or jointly, discharged, disciplined, threatened and/or otherwise discriminated against the Plaintiff in retaliation for his reporting and planning to report violations or suspected violations of state and federal laws including state and federal anti-discrimination laws, state and federal wage laws, state and federal labor laws, and constitutional speech protections.

55. As a direct and proximate result of the conduct of the Defendants, Officer Blomenkamp has suffered loss of income, mental anguish and emotional distress, humiliation, loss of reputation and other damages.

56. Also as a result of Defendants' violations of 740 ILCS 174/1, *et seq.*, the Plaintiff is entitled to costs, expert witness fees, disbursements and reasonable attorneys' fees incurred herein pursuant to 740 ILCS 174/30.

## COUNT III
## DEFAMATION

57. By reference hereto, the Plaintiff incorporates paragraphs 1 through 56 of his complaint.

58. Defendants Mayor Danford, Chief Woodruff, Dennis Herzing and Investigator Schutzenhofer have intentionally and maliciously communicated to third parties, including the general public, the press, and the Plaintiff's co-workers, false and defamatory statements about

Officer Blomenkamp in his professional capacity. Specifically, these Defendants have repeatedly impugned Officer Blomenkamp's reputation by stating that Officer Blomenkamp is dishonest, has a pattern of making misleading statements to superiors, is insubordinate, a troublemaker, and incapable of performing the duties of a police officer.

59. Officer Blomenkamp's reputation was damaged by these Defendants' defamatory statements.

60. The defamatory statements published about Officer Blomenkamp refer to improper or incompetent conduct in the Plaintiff's business, trade, profession, office and calling, and therefore constitute defamation per se.

61. These Defendants' statements were malicious and made in their capacity as employees and supervisors of the Village of Freeburg. These Defendants' conduct as the Village of Freeburg's agents during the course and scope of their employment is imputable to the Village of Freeburg under the vicarious liability doctrine.

62. As a direct and proximate result, Officer Blomenkamp has suffered damage to his reputation, loss of income, past and future, and emotional distress.

### COUNT IV
### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

63. By reference hereto, the Plaintiff incorporates paragraphs 1 through 62 of his complaint.

64. At all relevant times, the Plaintiff had a prospective economic relationship with the Defendant Village of Freeburg.

65. The Defendants prevented the Plaintiff from continuing his prospective employment relationship with the Village of Freeburg.

66. The Defendants intentionally and improperly interfered with the Plaintiff's

prospective economic advantage with the Village of Freeburg.

67. The Plaintiff suffered pecuniary harm as a result.

68. The Defendants committed the above-alleged facts with malice, bad faith, hostility, reckless indifference, or deliberate disregard for the rights of the Plaintiff.

69. As a direct and proximate result of Defendants' actions, Plaintiff has suffered mental anguish, emotional distress, humiliation, embarrassment, and other damages.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

70. By reference hereto, the Plaintiff incorporates paragraphs 1 through 69 of his complaint.

71. The Defendants Mayor Danford, Chief Woodruff, Dennis Herzing and Investigator Schutzenhofer's conduct described herein is extreme and outrageous.

72. These Defendants knew that there was a high probability that their conduct would inflict severe emotional distress upon the Plaintiff.

73. These Defendants recklessly disregarded the high probability that their conduct would inflict severe emotional distress upon the Plaintiff and their conduct did, in fact, cause the Plaintiff severe emotional distress.

74. The Plaintiff suffered significant distress as a result of these Defendants' actions as set forth in the facts above.

75. As a direct and proximate result of the conduct of the Defendants, Officer Blomenkamp has suffered severe emotional distress, pain, suffering, humiliation, depression and anxiety.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff John Blomenkamp prays for judgment against the Defendants,

as follows:

  A. For an Order adjudging the practices of the Defendants complained of herein to be in violation of the rights guaranteed to the Plaintiff under Federal and Illinois State law;

  B. For an award to the Plaintiff against the Defendants, jointly and severally, all relief available under 42 U.S.C. § 1983 and the Illinois Whistleblower's Act, 740 ILCS 174/1, *et seq.*, in amounts to be determined at trial, with interest on such amounts;

  C. For an award of damages arising from loss of past and future income, mental anguish, severe emotional distress and other damages, all in an amount to be determined at trial;

  D. For an award of punitive damages in an amount to be determined at trial;

  E. For an award to the Plaintiff of his attorney's fees, disbursements, expert fees and the costs of this action, pursuant to 42 U.S.C. § 1988 and 740 ILCS 174/30; and

  F. For such other and further relief as the Court deems just.

Respectfully submitted,

By: */s/ Anne M. Hillyer*
Anne M. Hillyer #498749
4441 Fatima Drive
St. Louis, MO 63123
Tel.: (314) 602-4473
Fax: (314) 735-4350
ahillyer@hillyerlaw.com

Attorney for Plaintiff